**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| Erin Sanders, individually and on behalf of all others similarly situated, | 3:21-cv-01155 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Hillshire Brands Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.       The Hillshire Brands Company ("defendant") manufactures, labels, markets, and sells breakfast sandwiches within a purported "whole grain" English muffin under their Jimmy Dean brand ("Product").



2.      The relevant front label representations include "English Muffin," "Made With Whole Grain*," "18g Protein Per Serving – Excellent Source of Protein," a picture of the Product and "Turkey Sausage, Egg White & Cheese Sandwich."

3.      Consumers increasingly prefer whole grain foods because they are aware of the healthfulness of whole grains relative to non-whole grains.

4.      Whole grains are nutritionally superior to non-whole grains because they include the entire grain seed – its endosperm, bran, and germ.[1]

5.      The bran and germ of a grain seed contain important nutrients like dietary fiber, and vitamins, minerals, and antioxidants such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.

6.      "Non-whole grains" or "refined grains" have been processed to remove their bran and germ, thereby removing the dietary fiber and most other nutrients.

7.      Most refined grains are enriched, a process that adds back some of the previously removed iron and B vitamins (thiamin, riboflavin, niacin, and folic acid).

8.      Because of this process, "enriched" is often used to describe refined grains.[2]

9.      Because enriched flour only contains the endosperm and mainly consists of starch, it is white in color ("white flour").

10.      Other nutrients, including vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper, calcium, and selenium, are not added back in.[3]

11.      Significantly, the fiber removed is not replaced.

---

[1] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 (click "A Closer Look Inside Healthy Eating Patterns").
[2] AM. HEART ASS'N, *Whole Grains and Fiber*, HEART.ORG (2016), http://goo.gl/3g1XVF.
[3] THE WHOLE GRAINS COUNCIL, NUTRIENTS IN WHEAT FLOUR: WHOLE, REFINED AND ENRICHED (2010), http://goo.gl/rbl80Z (last viewed May 18, 2016).

12.   The 2015 Dietary Guidelines for Americans recommends that at least half of the grains in a healthy diet should be whole grains.[4]

13.   The Scientific Report of the 2015 Dietary Guidelines Advisory Committee found "strong and consistent evidence" demonstrating that higher consumption of whole grains and lower intakes of refined grains is associated with decreased risk of cardiovascular disease.[5]

14.   The Dietary Guidelines recommend that Americans dramatically increase their intake of whole grains, and that at least 50% of grains consumed be whole grains.[6]

15.   A 2015 survey found that 64% of Americans have increased their whole grain consumption in the past five years, and this trend has continued.[7]

16.   As of 2015, 31% of Americans reported that they "nearly always" choose whole grains over non-whole grains, compared to only 4% five years prior.

17.   Since consumers are seeking more whole grain products, there are more labels which misrepresent the amount of whole grain they contain.

18.   The Federal Trade Commission ("FTC") and FDA have stated that consumers are likely to perceive whole grain claims to mean that a product is predominantly whole grain.

19.   This consumer misperception was recently confirmed by an independent study of

---

[4] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., Dietary Guidelines for Americans 2015–2020 (8th ed. 2015), available at http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[5] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture*, at Part D, Chapter 2, pp. 8–9 (Feb. 2015), *available at* http://goo.gl/YjXWlr.
[6] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 & 2 (click "A Closer Look at Current Intakes and Recommended Shifts"); *see also* U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 7, at Part D, Chapter 2, pp. 8–9.
[7] Eric Schroeder, *Survey Shows Spike in Whole Grains Consumption*, FOOD BUS. NEWS, Aug. 31, 2015, *available at* http://goo.gl/BRupWU; Elizabeth Crawford, *7 Trends Influencing the Evolution of Health, Wellness and Consumers' Views of Food*, FOODNAVIGATOR-USA.COM (Jan. 15, 2016, 10:36 AM), http://goo.gl/aCqb7e (identifying "the emerging focus on ancient grains" as one of seven consumer food trends to grow in 2016).

consumer perception of wholegrain claims.[8]

20.     Respondents showed substantial difficulty in estimating whole grain content of products found in the marketplace and overestimated the amount of whole grains relative to refined, enriched grains.

21.     At least 40% of the time, a whole grain claim resulted in the respondents believing that the products were entirely or at least half whole grain.

22.     Though the Product's front label prominently states, "MADE WITH WHOLE GRAIN," it is misleading because the primary ingredient in the sandwich portion of the Product is "ENRICHED WHEAT FLOUR," shown in the very fine print of the ingredient list on the side panel.



INGREDIENTS: MUFFIN: ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, WHOLE GRAIN WHEAT FLOUR, YEAST, WHEAT GLUTEN, CONTAINS LESS THAN 2% OF: DEGERMED YELLOW CORN FLOUR, DEGERMED YELLOW CORNMEAL, SODIUM BICARBONATE, FUMARIC ACID, CORN STARCH, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE, CALCIUM SULFATE, SALT, AMMONIUM CHLORIDE, HONEY, CALCIUM PROPIONATE AND POTASSIUM SORBATE (PRESERVATIVES), SOYBEAN OIL, HIGH FRUCTOSE CORN SYRUP, VINEGAR.

---

[8] Jennifer L Pomeranz et al., "Consumer confusion about wholegrain content and healthfulness in product labels: a discrete choice experiment and comprehension assessment," Public Health Nutrition (2020): 1-8.

23.     The amount of "WHOLE GRAIN WHEAT FLOUR" in the Product is slightly above two percent of the total weight of ingredients used in the English muffin portion of the Product.

24.     The Product contains only two grams of dietary fiber per serving, consistent with a food with a *de minimis* amount of whole grain.

25.     Since the Product contains meat and eggs and makes a whole grain claim, its label is purportedly subject to approval by the USDA.

26.     The USDA reviews some whole grain claims and requires that such claims meet minimum whole grain requirements and be truthful and not misleading.[9]

27.     To make a whole grain claim under the USDA rules a product must contain a minimal quantity of the whole grain component – at least 8 grams of dry whole grain ingredient per labeled serving size of the meat or poultry product as declared in the nutrition facts panel on the label.

---

[9] The label sketch approval process only requires approval for the initial label. Revisions or subsequent variations to an approved label are not required to further submit to the label review process.

28.    However, the Product only contains 5 grams of whole grain, as indicated at the bottom of the side panel – "*THIS PRODUCT PROVIDES 5G OF WHOLE GRAIN IN A 1 SANDWICH SERVING. U.S.D.A. RECOMMENDS 48G OF WHOLE GRAIN EVERY DAY."



29.    Thus, the Product does not contain 8g whole grain per serving, nor is the bread part predominantly whole grain, despite the reasonable expectations that the "made with whole grain" claim denotes a product with at least a minimum amount of whole grains.

30.    The marketing of the Product is misleading because the bread portion contains mostly non-whole grains and contains only a small amount of whole grains.

31.    Other than the small print at the bottom of the side of the box indicating the product has 5 grams of whole grain per serving, no other context is provided for how much 5 grams of whole grain is, in relationship to the much larger amount of refined grain.

32.     The Dietary Guidelines recommends that someone consuming 2,000 calories per day consume 3 ounce-equivalents—or, about 50 grams—of whole grains per day.

33.     Absent context, as both the FDA and the FTC have warned, consumers can be – and are – misled by statements about whole grain foods.[10]

34.     Defendant is familiar with marketing research and knows that many of its customers purchase foods with whole grain claims because they believe such products are predominantly whole grain or contain a non-*de minimis* amount of whole grain.

35.     Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages. Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

36.     The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

37.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

38.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

---

[10] Comments, *supra* note 11, at 3–4; Experimental Study on Consumer Responses to Whole Grain Labeling Statements on Food Packages, 77 Fed. Reg. 11,547, 11,547 (Feb. 27, 2012), *available at* https://goo.gl/aW0Nm8.

39.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

40.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

41.     The Product is sold for a price premium compared to other similar products, no less than approximately no less than $5.98 per box of four, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

42.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

44.     Plaintiff Erin Sanders is a citizen of Illinois.

45.     Defendant The Hillshire Brands Company is a Maryland corporation with a principal place of business in Springdale, Washington County, Arkansas.

46.     Plaintiff and defendant are citizens of different states.

47.     Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

48.     Venue is in the East St. Louis Division because plaintiff resides in St. Clair County, which is where the events giving rise to the present claims occurred.

<u>Parties</u>

49.     Plaintiff Erin Sanders is a citizen of Marissa, St. Clair County, Illinois.

50.     Defendant The Hillshire Brands Company, is a Maryland corporation with a

principal place of business in Springdale, Arkansas, Washington County.

51.    Defendant owns the famous "Jimmy Dean" brand of breakfast sausages, which have been established for over fifty years.

52.    Defendant is one of the largest consumer packaged foods companies in the country.

53.    The Product is available to consumers from retail and online stores of third-parties and is sold in boxes of four.

54.    Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 1410 N Market St, Sparta, IL 62286, between August 2021 and September 2021, among other times.

55.    Plaintiff bought the Product because she expected it would contain a predominant amount of whole grain flour.

56.    Plaintiff did not expect the Product (the bread portion) to contain a significant percent less of whole grain flour and mostly be made from non-whole grain flour.

57.    Plaintiff knew that Defendant was a brand with an established reputation for quality, which would live up to its word on the Product's composition.

58.    Plaintiff bought the Product at or exceeding the above-referenced price.

59.    Plaintiff relied on the representations identified here.

60.    Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

61.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

62.    The Product was worth less than what Plaintiff paid and she would not have paid as

much absent Defendant's false and misleading statements and omissions.

63.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

64.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

65.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

66.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

67.   Plaintiff is an adequate representative because her interests do not conflict with other members.

68.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

69.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

70.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

71.   Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

72.    Plaintiff incorporates by reference all preceding paragraphs.

73.    Plaintiff and class members desired to purchase a product that contained a predominant amount of whole grain flour relative to enriched flour.

74.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

75.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

76.    Plaintiff relied on the representations.

77.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

78.    The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a predominant amount of whole grain flour relative to enriched flour.

79.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80.    This duty is based on Defendant's outsized role in the market for this type of Product.

81.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

82.    Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

83.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

84.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

85.   Defendant had a duty to truthfully represent the Product, which it breached.

86.   This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Jimmy Dean brand, known for high quality foods for over 50 years.

87.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

88.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

89.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

90.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a predominant amount of whole grain flour relative to enriched flour

91.     Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

92.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   September 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

13

60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com